# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| WATERS TECHNOLOGIES CORP., ) | Civil Action No. ___-cv-____ |
| ) | |
| Plaintiff, ) | **JURY TRIAL DEMANDED** |
| ) | |
| v. ) | |
| ) | |
| PHENOMENEX, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## COMPLAINT

Plaintiff Waters Technologies Corp. ("Waters") complains against Phenomenex, Inc. ("Phenomenex"), as follows:

### PARTIES AND NATURE OF THE CASE

1.      Waters is a Delaware corporation having its principal place of business at 34 Maple Street, Milford, Massachusetts, 01757.

2.      Founded in 1958, Waters is the world's leading supplier of sophisticated laboratory instruments, such as high performance liquid chromatography systems and mass spectrometers, used for the separation, extraction, and analysis of chemical and biological samples.  Waters also designs, manufactures, and sells various consumable products (*e.g.*, single-use or disposable products, such as chromatography columns) that are used in, or in connection with, the liquid chromatography and other lab instruments.  Waters's products are used in a variety of industries and settings for research and development, drug discovery and manufacture, purification, quality control, sample testing, food and beverage safety testing and nutritional labeling, water and environmental testing, and other analytical applications. Waters's customers

include pharmaceutical and biotech companies, universities and other research institutions, the United States Food and Drug Administration, the United States Environmental Protection Agency, and various other entities. Many of Waters's life sciences, university, and research customers are located right here in Massachusetts.

3.      Waters designs, develops, and manufactures a number of its innovative products here in Massachusetts and owns a number of patents directed to its various separation and analytical chemistry technologies. In particular, Waters researches, designs, and develops the majority of its liquid chromatography and related products at its headquarters here in Massachusetts.

4.      In or about the early 2000s, scientists and engineers from Waters's R&D facility in Milford, Massachusetts, invented an improved solid phase extraction ("SPE") device, which is a consumable chromatographic product used to prepare samples for use in liquid chromatography and mass spectrometry systems. In 2002, Waters applied for a patent directed to this SPE device, and the patent issued in 2004. The patent, which Waters owns via assignment, is U.S. Patent No. 6,723,236 ("the '236 Patent" or "the Waters patent"), and is entitled "Device for Solid Phase Extraction and Method for Purifying Samples Prior to Analysis." A copy of the patent is attached as <u>Exhibit A</u>.

5.      Since about 2002, Waters has sold SPE devices embodying inventions claimed in the '236 Patent, including the Oasis® μElution™ 96-well plate. Waters marks these products with the '236 Patent.

6.      Waters also owns all common-law rights in the μElution trademark, which Waters has used in commerce in connection with its SPE devices since about 2002. The μElution trademark, *inter alia*, signifies the patented plate technology covered by the '236 Patent.

ME1 21662645v.1

7.      Defendant Phenomenex is a California corporation having its corporate headquarters at 411 Madrid Avenue, Torrance, California, 90501-1430.

8.      Phenomenex manufactures and sells liquid chromatography equipment, including in particular chromatography columns and related consumables.  In this regard, Phenomenex competes directly with Waters in the market for liquid chromatography consumables.  On information and belief, Phenomenex has targeted and has sold competing products to many of Waters's long-time customers, including customers based here in Massachusetts.

9.      In or about October 2015, Phenomenex began selling the Strata™ X µElution 96-well plates that are virtual knock-offs of Waters's Oasis® µElution™ 96-well plates and are designed and marketed to compete directly with Waters's products.  Indeed, not only do these Phenomenex SPE devices infringe the '236 Patent (as alleged further below), but they also use the same µElution trademark.  Further, as alleged in more detail below, Phenomenex marketing materials promote the product based on the same marketing pitch that Waters uses and, indeed, appear to parrot the advantages disclosed directly in the '236 Patent itself.

10.     A side-by-side comparison of the competing products is shown below.

| Waters's patented Oasis® µElution™ 96-well plate | Phenomenex's competing Strata™ X µElution 96-well plate |
|---|---|
|  | |

## JURISDICTION AND VENUE

11.     This is an action for patent and trademark infringement arising under the Patent Laws of United States, Title 35, United States Code, and the Trademark Laws of the United States, Title 15, United States Code.  This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1338 (patent and trademark actions).  This action also includes related state and common-law claims, such as unfair competition.  Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over such claims because they are substantially related to, or arise from the same facts and transactions as, the patent and trademark claims.

12.     Venue is proper under 28 U.S.C. § 1391(b) and (c) and § 1400(b).  Phenomenex has committed and/or threatened to commit acts of infringement in this District, and this action arises from those acts.  Phenomenex has regularly engaged in business in Massachusetts and has purposefully availed itself of the privilege of conducting business in this District, for example, by offering for sale and selling the accused SPE devices to customers in this District.

13.     Massachusetts has a large and vibrant life sciences industry (including pharmaceutical and biotech companies, medical diagnostics and device companies, etc.), as well as an equally important and renown research community (*e.g.*, universities, teaching hospitals, and research institutions).  Many of these Massachusetts-based companies and institutions are customers of Waters, and a substantial portion of Waters's sales and revenues come from Massachusetts-based customers.  On information and belief, Phenomenex has targeted and has sold its accused infringing devices, as well as other competing products, to these same Massachusetts-based customers, including Waters's own SPE customers.

14.     Furthermore, Waters and its agents here in Massachusetts were able to order samples of the accused infringing devices from Phenomenex and have them shipped to

Massachusetts. Nothing prevented Waters and its agents from doing so. That is, Phenomenex does not prevent Massachusetts customers from buying the accused infringing devices. Nor does Phenomenex appear to limit sales to Massachusetts residents in any way.

**THE PATENT INFRINGEMENT**

15. On April 20, 2004, the United States Patent and Trademark Office ("USPTO") issued United States Patent No. 7,723,236, entitled "Device for Solid Phase Extraction and Method for Purifying Samples Prior to Analysis" ("the '236 Patent"). The '236 Patent was assigned to Waters, which owns the full rights, title, and interest in it.

16. The '236 Patent has not expired and is in full force and effect. Pursuant to 35 U.S.C. § 282, the '236 Patent and each of its claims are presumed valid and enforceable.

17. Phenomenex has actual and constructive notice of the '236 Patent. In accordance with 35 U.S.C. § 287(a), Waters marks its patented Oasis® μElution™ SPE devices with the '236 Patent, thus giving Phenomenex constructive notice. In addition, Waters gave actual notice to Phenomenex via a letter from Waters's counsel dated December 22, 2015.

18. Despite having notice of the Waters patent, Phenomenex began selling its competing Strata™ X μElution SPE devices in or about October 2015. In particular, Phenomenex makes, uses, offers to sell, and sells the following models (listed by part number) that Waters accuses of infringement:

| Part Number ▲ | Brand | Phase | Sorbent Mass /Volume | Format | Price |
|---|---|---|---|---|---|
| 8M-S123-4GA | Strata-X | X-A, Strong Anion Mixed Mode | 2 mg / 96-well plate | 96-Well Plate | USD 290.00 (EA) |
| 8M-S100-4GA | Strata-X | X, Polymeric Reversed Phase | 2 mg / 96-well plate | 96-Well Plate | USD 290.00 (EA) |
| 8M-S038-4GA | Strata-X | X-AW, Weak Anion Mixed Mode | 2 mg / 96-well plate | 96-Well Plate | USD 290.00 (EA) |
| 8M-S035-4GA | Strata-X | X-CW, Weak Cation Mixed Mode | 2 mg / 96-well plate | 96-Well Plate | USD 290.00 (EA) |
| 8M-S029-4GA | Strata-X | X-C, Strong Cation Mixed Mode | 2 mg / 96-well plate | 96-Well Plate | USD 290.00 (EA) |

*See* Phenomenex's website at www.phenomenex.com/Products/SPDetail/Strata-X?order=true.

19.     One embodiment of the patented SPE devices comprises a multi-well SPE device (sometimes called a well plate) as illustrated in Figure 3 of the patent, shown below:



20.     Phenomenex's accused SPE device looks very similar to Figure 3, even using the labeling format for the rows and columns of sample wells.  A drawing of the device from Phenomenex's marketing brochure and photos of one of the accused SPE devices that Waters was able to buy and have sent to Massachusetts are shown below:

ME1 21662645v.1



From <u>Exhibit G</u>, Phenomenex marketing brochure, at 1.



Side view of sample accused SPE device purchased from Phenomenex.



Top view of accused SPE device purchased from Phenomenex.

21.     An exemplary claim chart showing Phenomenex's infringement of several representative claims of the '236 Patent is attached as <u>Exhibit B</u> and is incorporated by reference into this complaint.   This claim chart is based on Waters's preliminary analysis and diligence and may be amended or supplemented after further investigation and discovery in this action. The claim chart is for notice purposes under Fed. R. Civ. P. 8 and 12.

**<u>THE TRADEMARK INFRINGEMENT</u>**

22.     In 2002, Waters introduced the μElution trademark to serve as the brand designation for the patented SPE technology covered by the '236 Patent, often referring to a product that embodied the patented technology as a "patented μElution plate."   For example, a product brochure from 2004, attached as <u>Exhibit C</u>, uses the μElution trademark as follows:

## NEW—Sep-Pak® 96-well μElution Plates

Sep-Pak® $tC_{18}$ is now available in the patented* μElution plate. This plate is designed to enable SPE clean up and concentration of small volume samples. The recommended protocol for elution from this plate is as low as 25 μl. The low volume extracts from the plate can be injected directly, eliminating time consuming evaporation steps.

### Sep-Pak® 96-well μElution Plate

| Description | Qty | Part Number |
|---|---|---|
| Sep-Pak® $tC_{18}$ μElution Plate | 1/pkg | 186002318 |

\* Patent pending

*See* <u>Exhibit C</u> at 18.

23.     Since Waters began use of the μElution trademark in 2002, Waters has spent time, effort, and financial resources in advertising and publicizing the sale of the patented SPE devices bearing the μElution trademark and promoting its novel SPE plate technology that it designates with the μElution trademark.  The goods bearing the μElution trademark are promoted, *inter alia*, in Waters's product catalogs, product brochures, and on its website, <u>www.waters.com</u>.  For example:



**μElution Plates**

- Patented μElution plate design
- No evaporation and reconstitution necessary due to elution volumes as low as 25 μL
- Ideal for SPE cleanup and analyte enrichment of small sample volumes
- Up to a 15x increase in concentration
- Compatible with most liquid-handling robotic systems for automated, reliable high throughput SPE (HT-SPE)

*See* Exhibit. D, at 3, *available at* http://www.waters.com/waters/en_US/Oasis-Sample-Extraction-Products/nav.htm?cid=513209&locale=en_US. Excerpts from various product catalogs featuring the μElution™ trademark are attached as Exhibit E.

      24. Further, for over a decade, the μElution trademark has also been affixed to the SPE device itself as well as the product packaging therefore. For example:





25.    Waters has enjoyed significant sales of µElution™ branded products in the thirteen-plus years such products have been on the market.  Waters has sold µElution™ branded products nationwide, routinely selling them to pharmaceutical and biotech companies, universities, laboratories, and research institutions, among others, here in Massachusetts and throughout the country.

26.    As a result of its continuous and exclusive use of the µElution trademark, the high quality of Waters's SPE devices, and the renown of the '236 Patent technology, the public and the trade have come to recognize the µElution designation as a trademark of Waters.  The µElution trademark is distinctive and is recognized among purchasers as designating origin, relationship, sponsorship, and/or association of the marked goods with Waters.  The µElution trademark acquired this status long prior to the onset of Phenomenex's wrongful acts.

27.    Despite Waters's longstanding use of the µElution trademark for the patented SPE devices, Phenomenex is marketing its competing (and infringing) SPE devices under an identical µElution trademark.  Phenomenex is promoting, offering for sale, and selling a substantially identical 96-well SPE device under the µElution trademark.  For example:



*See* Exhibit F, *available at* http://www.phenomenex.com/Info/Page/2015microelution.



*See* μElution promotional video, *available at*

http://phenomenex.blob.core.windows.net/webdocument/microelution_webinar.mp4**.**

28.     Phenomenex's µElution branded SPE devices are identical or near identical to Waters's µElution™ SPE devices, and they travel in the same channels of trade and are purchased by the same classes of customers as Waters's µElution branded products.  Indeed, Phenomenex's µElution branded SPE devices directly compete with Waters's SPE device.

29.     Phenomenex's use of the identical µElution trademark in connection with identical and competing goods is likely to cause consumer confusion and give consumers the false impression that Phenomenex and its goods are affiliated with or sponsored by Waters, or that Phenomenex's goods emanate from or are manufactured and sponsored by Waters, when Phenomenex's goods are in fact offered by a competitor of Waters.  Indeed, Phenomenex's misappropriation of the patented plate technology and the µElution trademark will cause consumers to mistakenly believe, among other things, that Waters has authorized Phenomenex to sell or resell Waters's valuable µElution plate technology.

30.     Upon information and belief, Phenomenex knew of the Waters µElution mark at the time of its adoption of its infringing trademark.  Phenomenex willfully and knowingly selected the identical µElution designation to further its efforts to willfully infringe of the '236 Patent and wrongfully deprive Waters of sales and market share.

## PHENOMENEX'S UNFAIR OR DECEPTIVE MARKETING

31.     Not only has Phenomenex infringed Waters's patent and trademark, it has also sought to further its willful infringement by unfairly co-opting Waters's marketing and promotional materials for Waters's own Oasis® µElution SPE devices.

32.     In particular, the '236 Patent touts a number of advantages that users can achieve with the patented SPE devices.  Waters has promoted its patented Oasis® µElution™ SPE devices based in part on these advantages enabled by the '236 Patent.  Now Phenomenex has

ME1 21662645v.1

marketed its competing (and infringing) Strata™ X μElution SPE devices by promoting the very same advantages touted in the '236 Patent and in Waters's marketing message.

33.     As one example, the patented SPE devices allow the use of smaller volumes of solvent. *See*, *e.g.*, '236 Patent at 4:55–58 ("The present invention enables the retention of target compounds with a wide range of chromatographic polarity with elution in volumes that are much reduced from the current state of the art for solid phase extraction"); 7:27–31 ("The present invention can be used to purify samples prior to analysis, i.e., to isolate a desired target substance from an interfering substance in a sample medium, using a smaller elution volume than heretofore possible with prior art SPE devices").  The use of smaller elution solvent volumes, in turn, saves time and money by, *inter alia*, reducing the need for certain steps in the extraction process (such as the "drydown and reconstitution" steps); reducing the cost of the elution solvent needed (elution solvents can be expensive); and reducing the loss or increasing the recovery of target analytes. *See*, *e.g*., '236 Patent at 3:3–8 ("The ability to elute in very small volumes of solvent has the added benefit of minimizing the amount of time required to evaporate and reconstitute the sample before proceeding with analysis if further concentration or solvent exchange is required.  If elution volume can be kept very low, then <u>drydown and reconstitution can be entirely eliminated</u>.") (emphasis added); 5:3–7 ("This mixture is suitable for direct analysis by HPLC, thereby <u>eliminating the time, expense, and potential sample losses associated with evaporation and reconstitution steps</u>, while still maintaining a high degree of target compound(s) concentration.") (emphasis added).

34.     As seen in the excerpts from Waters's marketing materials, pasted below, Waters promotes its Oasis® μElution SPE devices based on these advantages enabled by the '236 Patent:

## Formats

**μElution Plates**

- Patented μElution plate design.
- Ideal for SPE cleanup and analyte enrichment of sample volumes ranging from 10 μL to 375 μL.
- No evaporation and reconstitution necessary due to elution volumes as low as 25 μL.
- Up to a 15x increase in concentration.
- Compatible with most liquid-handling robotic systems for automated, reliable high throughput SPE (HT-SPE).



# Oasis μElution Plates for Ultra Low Elution Volumes

- Elute in as little as 25 μL with no evaporation/reconstitution
- Ideal for small sample volumes
- Up to a 25x increase in sensitivity

Scientists in both drug discovery and drug development can prepare biological samples for LC/MS/MS analysis using a more efficient, generic methodology and can successfully eliminate the time consuming evaporation step with the new Oasis μElution plate.

\* Patent Pending

## Waters Newest Innovation in SPE Technology



The new Oasis μElution plate combines patented\* plate design, proven Oasis chemistries, and recommended protocols enabling elution volumes as low as 25 μL. Now for the first time you can perform SPE clean-up and concentration of very small sample volumes.

Achieve superior results compared to protein precipitation in the same or less time using the Oasis μElution Plate. This plate produces extracts that can be directly injected, eliminating the time-consuming evaporation step. Just elute and shoot. Eluting in 25 μL without evaporation provides up to 25x increase in sample concentration, enabling sensitive, robust, and reproducible SPE results.

Excellent Recovery in 25 μL Elution



The innovative features of the new Oasis μElution plates enable sensitive, robust, reproducible results without evaporation and reconstitution.

35.     Similarly, as seen in the excerpts from Phenomenex's marketing literature shown below, Phenomenex touts the elimination of the "drydown and reconstitution" steps, as well as the other advantages disclosed in the '236 Patent and in Waters's marketing materials:

ME1 21662645v.1





ME1 21662645v.1



36.     As alleged above, Phenomenex is targeting Waters's customers and doing so with the same marketing message and even the same μElution trademark, further showing its willful scheme to infringe Waters's valuable patent and trademark rights.

37.     Waters has been and will continue to be damaged by Phenomenex's accused conduct.

## COUNT I
## INFRINGEMENT OF THE '236 PATENT

38.     Waters realleges and incorporates by reference the paragraphs above as though fully set out herein.

39.     In violation of 35 U.S.C. § 271, Phenomenex has been and still is directly infringing the '236 Patent by manufacturing, using, offering to sell, and/or selling within the United States SPE devices that are covered by one or more claims of the '236 Patent.  A preliminary claim chart showing representative examples of infringement and listing the accused SPE devices is attached as Exhibit B and is incorporated into this complaint by reference.

40.     Phenomenex has had at least constructive notice of the '236 Patent pursuant to 35 U.S.C. § 287(a) because Waters marks its patented SPE devices with the '236 Patent.

41.     Phenomenex has profited and continues to profit from its manufacture, use, offers to sell, and sale of the infringing SPE devices.

42.     On information and belief, Phenomenex's infringement of the '236 Patent has been and continues to be willful, wanton, and deliberate.  Indeed, Phenomenex has even misappropriated the trademark Waters used to designate the patented SPE plate design and touted the advantages of its accused SPE devices by copying or co-opting the specific advantages listed in the patent and in Waters's own marketing materials, thus showing Phenomenex's awareness of the patent and willful intent to infringe.

43.     Waters has been and continues to be damaged and irreparably harmed by Phenomenex's infringement of the '236 Patent.

ME1 21662645v.1

# COUNT II
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

44.     Waters realleges and incorporates by reference the paragraphs above as though fully set out herein.

45.     Waters enjoys common law trademark rights in the designation µElution based on its continuous and exclusive use of that term throughout the United States for more than a decade.

46.     The infringing products distributed, promoted, provided, sold, and offered for sale by Phenomenex under the µElution mark are identical or closely related Waters's product that are distributed, promoted, provided, offered for sale and sold under the identical µElution mark.

47.     By misappropriating and using a mark that is identical to Waters's µElution mark, Phenomenex has misrepresented and falsely described to the public the origin and source of the infringing products and has created a likelihood of confusion among the public and the ultimate purchasers as to both the source and sponsorship of the infringing products.

48.     Phenomenex's unlawful and unauthorized distribution, promotion, offer for sale, and sale of the infringing products creates express and implied misrepresentations that the infringing products were authorized, licensed, approved of and/or sponsored by Waters, all to Phenomenex's profit and Waters's great damage and injury.

49.     Phenomenex's use of Waters's µElution mark in connection with the infringing products constitutes a false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

50.     Phenomenex's infringement of the µElution trademark is willful and intentional, and, indeed, corresponds with and is amplified by its willful infringement of Waters's patented µElution technology, as claimed in the '236 Patent.

19

51.     As a direct and proximate result of Phenomenex's infringement of Waters's μElution mark, Waters has been damaged.  Waters is thus entitled to the recovery of damages, multiple damages, reasonable attorney's fees, prejudgment interest and costs pursuant to 15 U.S.C. § 1117(a) and (b).

52.     Waters has no adequate remedy at law, and if Phenomenex's activities are not enjoined, Waters will suffer immediate and continuing irreparable harm and injury to its business and to its reputation, and to the goodwill associated with the μElution mark.

**COUNT III**
**TRADEMARK INFRINGEMENT UNDER MASSACHUSETTS COMMON LAW**

53.     Waters realleges and incorporates by reference the paragraphs above as though fully set out herein.

54.     Waters has built up valuable goodwill in its μElution mark through its continuous use and promotion of the μElution mark and the products on which the mark is used.

55.     With knowledge of Waters's prior rights in the μElution mark, Phenomenex has, without authorization from Waters, traded on and continues to trade on, the goodwill associated with the μElution mark, and has misled the public into believing that the infringing products are endorsed, sponsored by, licensed, or otherwise affiliated with, Waters.

56.     Phenomenex's unauthorized use of μElution mark is likely to cause confusion, mistake and deception to the public as to the affiliation, connection, or association of Phenomenex with Waters, and as to the origin, sponsorship or approval of Phenomenex's goods by Waters.

57.     By Phenomenex's unauthorized acts, Phenomenex is directly infringing Waters's rights in Waters's μElution mark in violation of the common law of the Commonwealth of Massachusetts, to the damage of Waters and the unjust enrichment of Phenomenex.

ME1 21662645v.1

58.     Upon information and belief, Phenomenex's conduct is intentional and willful because Phenomenex has infringed and continues to infringe upon Waters's rights in the µElution mark (i) with knowledge that Waters owns and has the exclusive right to use the µElution mark, (ii) with the intention of causing a likelihood of confusion and mistake and to deceive, and (iii) with the intention of eliminating competition from Waters.

59.     Waters has no adequate remedy at law, and if Phenomenex's activities are not enjoined, such activities will continue to cause irreparable harm and injury to the goodwill symbolized by Waters's µElution mark.

### COUNT IV
### UNFAIR COMPETITION IN VIOLATION OF MASSACHUSETTS COMMON LAW

60.     Waters realleges and incorporates by reference the paragraphs above as though fully set out herein.

61.     With knowledge of the distinctiveness of Waters's µElution mark and association of the µElution mark with Waters's patented products, Phenomenex intended to and did trade on the goodwill associated with Waters's µElution mark by distributing, promoting, providing, offering for sale, and selling products that are substantially identical and/or closely related to Waters's goods associated with its µElution mark.

62.     Phenomenex's acts as alleged herein are likely to cause confusion, mistake, and deception to the public as to the affiliation, connection, or association of Phenomenex with Waters, and as to the origin, sponsorship, or approval of the infringing products by Waters, all to the detriment and damage of Waters and the unjust enrichment of Phenomenex.

63.     Waters has no adequate remedy at law.  If Phenomenex's activities are not enjoined, Waters will suffer immediate and continuing irreparable harm and injury to its reputation and to the goodwill and distinctiveness in Waters's µElution mark.

**COUNT V**
**UNLAWFUL DECEPTIVE ACTS AND PRACTICES**
**(M.G.L. c. 93A §11)**

64.     Waters realleges and incorporates by reference the paragraphs above as though fully set out herein.

65.     Waters and Phenomenex are both engaged in trade and commerce (including, *e.g.*, selling liquid chromatography consumables and, specifically, SPE devices) in the Commonwealth of Massachusetts.

66.     Phenomenex's unfair and deceptive conduct accused of violating Ch. 93A occurred, and is occurring, primarily and substantially in the Commonwealth of Massachusetts.

67.     Phenomenex's conduct, including its infringing use of the µElution  mark, has been willful, wanton, reckless, and in total disregard of Waters's rights.

68.     Phenomenex's acts as described above constitute deceptive acts and practices in violation of M.G.L. c. 93A §11.

69.     Phenomenex's unauthorized use of the µElution mark and/or marks that closely resemble the Waters mark is likely to cause confusion, mistake, and/or deception among consumers, and thus constitutes an unfair trade practice.

70.     Waters has no adequate remedy at law.  If Phenomenex's activities are not enjoined, Waters will suffer immediate and continuing irreparable harm and injury to its reputation and to the goodwill and distinctiveness in Waters's µElution mark.

ME1 21662645v.1

## PRAYER FOR RELIEF

WHEREFORE,  Waters respectfully requests the following relief:

1.　　A judgment in favor of Waters and against Phenomenex on all Counts;

2.　　An order that Phenomenex, its parents, subsidiaries, officers, agents, employees, and all persons acting for, with, by, through or under them be preliminarily and then permanently enjoined and restrained

　　a)　　From infringing the '236 patent;

　　b)　　From using in any manner Waters's µElution mark, or any other mark which so resembles the µElution mark as to be likely to cause confusion, deception, or mistake on or in connection with the distribution, advertising, promotion, provision, offering for sale, or sale of any service not emanating from Waters or not authorized by Waters to be sold in connection with the µElution mark.

　　c)　　From passing off, inducing, or enabling others to sell or pass off any goods as goods produced by Waters, which are not in fact Waters's goods, or not produced under the control and supervision of Waters and approved by Waters for sale under Waters's µElution mark.

　　d)　　From committing any acts calculated to cause consumers to believe that Phenomenex's goods and services are sold under the control or supervision of Waters, or sponsored or approved by, connected with, guaranteed by, or produced under the control and supervision of Waters;

　　e)　　From otherwise competing unfairly with Waters in any manner; and

　　f)　　From shipping, delivering, transferring or otherwise disposing of, in any manner, products or inventory bearing Waters's µElution mark or any mark confusingly similar thereto.

3.     An order directing the recall of any and all existing Phenomenex SPE devices that infringe the '236 Patent and/or the μElution trademark;

4.     An order that Phenomenex account for and pay over to Waters any profits realized by Phenomenex by reason of Phenomenex's unlawful and willful acts as alleged herein;

5.     An award of Waters's actual damages in an amount to be proven at trial and punitive damages in an amount to be proven at trial;

6.     An order that the amount of damages awarded to Waters be increased by a sum up to three times the amount thereof as provided by law;

7.     An award of interest to Waters, including pre-judgment interest, on all damages sums;

8.     An award of damages in such an amount as is reasonable for Waters to conduct marketing and advertising activities necessary to at least in part repair the damage done to its trademark and brand by the actions of Phenomenex;

9.     An award of Waters's costs and reasonable attorney's fees and such other and further relief as the Court may deem equitable, including, but not limited to, any relief set forth under 35 U.S.C. §§ 284 and 285, M.G.L. ch. 93A, and 15 U.S.C. §§ 1116–1118; and

10.     Such other and further relief as the Court deems just and proper.

ME1 21662645v.1

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule 38(b), Plaintiff Waters Technologies Corporation demands a jury trial on all issues so triable that are raised by this complaint.


Dated: December 22, 2015

Respectfully submitted

McCARTER & ENGLISH, LLP


By: /s/ _____

Erik Paul Belt (BBO # 558620)
Deborah M. Vernon (BBO # 663937)
Keith Toms (BBO #663369)
Wyley Proctor (BBO #666613)
Jennifer Itzkoff (BBO # 675694)
McCarter & English, LLP
265 Franklin Street
Boston, Massachusetts  02110
Tel.: (617) 449-6500
Fax: (617) 607-9200
ebelt@mccarter.com
dvernon@mccarter.com
ktoms@mccarter.com
wproctor@mccarter.com
jitzkoff@mccarter.com

ME1 21662645v.1